STATE of Tennessee, Appellee,

v.

Gene CRANK, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

July 11, 1986.

Permission to Appeal Denied by Supreme Court Nov. 3, 1986.

 

Gary Mason Jones, Al Cocke, Asst. Public Defenders, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen., James W. Thompson, Asst. Atty. Gen., David Komisar, Asst. Dist. Atty., Nashville, for appellee.

## OPINION

TATUM, Judge.

The defendant, Gene Crank, was sentenced to 15 years imprisonment on conviction for first-degree burglary and to life imprisonment for an aggravated rape conviction. On this appeal, he says that the trial court erred in admitting evidence of prior "bad acts" or prior convictions for impeachment purposes, in refusing to suppress identification evidence, in failing to declare a mistrial because of prosecutorial misconduct in closing argument, in limiting cross examination of a police officer and in not charging the lesser included offenses of aggravated rape. We find no reversible error and affirm the judgment below.

Although the defendant does not challenge the sufficiency of the evidence, we will briefly summarize the facts as established by the State's proof.

The victim, Dr. Marsha Warren was awakened at approximately 3:00 o'clock a.m. on July 9, 1984 by a man who got in bed with her. The man told the victim that he had a knife but that she would not be hurt if she did not fight him. The man stroked an object across Dr. Warren's neck which she believed to be a knife. Dr. Warren could see the face of the man because a light was shining into her bedroom from a hallway. The man attempted to engage in oral sex but abandoned this pursuit and required the victim to massage his penis. He then forced the victim to lay on her stomach and massaged her vagina and spanked her buttocks. He then forced his penis into her vagina.

After raping the victim, the defendant forced her to wedge her head between the bed and the wall, saying that he had to look for something. As soon as the victim felt

it was safe, she telephoned the police. The rapist took the bedsheet and about $6.00 in currency that was on the victim's desk.

The victim identified the defendant as being the rapist. She testified that he had an offensive body odor.

The pattern on shoe prints found on top of an air conditioner unit outside the victim's apartment matched the pattern on the sole of tennis shoes worn by the defendant at a lineup. A fingerprint found on the windowledge where the burglar gained entrance to the victim's residence matched the right thumbprint of the defendant.

The defendant told officers that he was working during the night of the rape. Other evidence established that he was not. Also, there was evidence, apart from the victim's testimony, that the defendant emitted an offensive body odor. The defendant and his wife testified that the defendant was at home at the time of the rape.

In the first issue, the defendant says that the court erred in allowing the State to prove "prior acts or prior convictions of defendant for impeachment purposes" because the probative value of this evidence was outweighed by its prejudicial effect. He premises this argument on the proposition that the other offenses were of the same character as those for which he was on trial.

The State was permitted, after a hearing outside the presence of the jury, to question the defendant on cross examination concerning a conviction for third-degree burglary in January, 1976 and two convictions in 1980 for attempt to commit a burglary. The State was also permitted to question the defendant about being involved in a burglary on August 8, 1979. The latter burglary was disposed of by a guilty plea to assault with intent to commit rape. The court ruled that the State would not be permitted to question the defendant concerning the assault to rape conviction because the prejudicial effect outweighed the probative value of this evidence. However, the court permitted the State to question the defendant concerning the fact that he was involved in the underlying burglary.

In *State v. Sheffield,* 676 S.W.2d 542 (Tenn.1984), the Supreme Court referred to *State v. Morgan,* 541 S.W.2d 385 (Tenn. 1976), wherein Rules 608(b) and 609(a) of the Federal Rules of Evidence were adopted. Rule 609(a) provides that crimes punishable by death or imprisonment in excess of one year, are admissible for impeachment purposes if the court determines that the probative value of evidence concerning the prior convictions outweighs its prejudicial effect on the defendant. The rule also provides that evidence of conviction for crimes involving dishonesty or false statements, regardless of punishment, is admissible. Rule 608(b) provides that a witness may be cross-examined relating to specific instances probative for credibility of the witness.

In the *Sheffield* case, the court intentionally declined to mandate use of express guidelines for the exercise of judicial discretion in weighing probative value against prejudicial effects. See 676 S.W.2d at page 548. In *Sheffield,* the defendant was being tried for first degree murder and the trial court admitted evidence that the defendant was previously convicted for voluntary manslaughter in order to impeach the defendant's testimony. The Supreme Court stated that it could not say that the trial judge abused his discretion in allowing this evidence.

■ Likewise, we cannot say that the trial court abused its discretion in this case in allowing evidence of the defendant's convictions involving three burglaries and the bad act for burglary. The trial court conscientiously weighed prejudicial effect against probative value and would not permit evidence of the conviction for assault to commit rape. After the evidence was admitted, the trial court carefully instructed the jury that they could consider it only for impeachment purposes. These multiple involvements in burglaries are highly probative on the credibility question and the jury was not permitted to hear that the defendant had been previously convicted for attempted rape. We overrule this issue.

In the next issue, the defendant avers that the identification procedure employed for a lineup was so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. He cites *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968) and its progeny.

The evidence heard at a suppression hearing established that the victim was not coached before viewing the lineup. Detective Flowers advised her that there would be no talking in the lineup room. After the victim had viewed the lineup, she placed a mark by the phrase "I do not identify anyone shown to me in the lineup." When Detective Flowers asked the victim why she was unable to make an identification, she responded that she was under the impression that she should make no identification unless she was 100 per cent certain and that she was only 95 per cent sure that the rapist was number 4 (the defendant). At this time, Detective Flowers asked her to so indicate this on the card, which she did.

■ A photograph was made of the lineup. It reveals that the five white men in the lineup were all approximately the same age, height and build. Facial hair of all five was generally similar. We find nothing in the record that would tend to suggest to the victim that the defendant was suspected by the police. There was nothing to otherwise emphasize the defendant or to single him out. We agree with the trial judge that the lineup procedure was not suggestive and we find no merit in this issue.

In the next issue, the defendant avers that the trial judge erred in overruling his objection to the State arguing "the missing witness rule" to the jury. He avers that the argument was based on facts not in evidence. We disagree. During closing argument, the prosecutor stated:

"Who didn't you hear from in this trial? You heard from Ms. Stockman that a man by the name of Allen Barrett came over to the police department to look at the latent print, to look at the controlled print, to study them. That is their guy, their expert—noticeably absent. And why? Why was he not here to testify? Because he looked at the prints and says, 'Yeah, that is Gene Crank.'

But that is the proof; they did not ask Ms. Stockman one question about whether or not Allen Barrett did, in fact, go over there; they didn't ask her a single question about that at all.

They want to keep from you the fact that their own expert went over and examined those fingerprints and he is not here. Draw your own conclusions of his absence, Ladies and Gentlemen."

There was competent proof in the record that a man named Allen Barrett, who was a representative of the Public Defender's Office, came to the police department and inspected the lifted fingerprint and the inked fingerprint of the defendant to make a comparison. The defendant did not call Mr. Barrett to testify.

In the recent case of *State v. Francis*, 669 S.W.2d 85, 88, 89 (Tenn.1984), the Supreme Court held:

"... a party may comment about an absent witness when the evidence shows that '[1] the witness had knowledge of material facts, [2] that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and [3] that the missing witness was available to the process of the Court for trial."

\*　　\*　　\*　　\*　　\*　　\*

"... Thus, in determining whether to permit the application of the missing witness inference, the trial judge must make an informed decision as to the absent witness' availability to the process of the court, the witness' capability to elucidate the transaction at issue, and whether a relationship exists between the witness and the party that would naturally incline the witness to favor the party."

■ We think that the evidence authorized the "missing witness" argument. Mr. Barrett was an employee of the Public Defender's Office and the defendant was

represented by the Public Defender. The evidence therefore established that he had knowledge of material facts, was available to the process of the court, and the relationship would naturally incline Mr. Barrett to testify for the defendant.

We disagree with the defendant that the *Francis* case requires "an advance ruling from the trial judge before arguing the adverse witness inference." As noted above, it is required only that the trial judge be capable of making an "informed decision." The evidence enabled the trial judge to make an informed decision. This case is distinguishable from the *Francis* case in that the missing witness in *Francis* was a six-year-old child and the trial judge was unable to determine that the child had the capability to elucidate the transaction at issue.

In the next issue, the defendant says that the trial court erroneously limited his cross examination of a police officer regarding his knowledge of fingerprint lifting. Officer Evans testified that he lifted fingerprints at the crime scene and turned them over to experts for fingerprint comparison. The defendant complains that the trial court sustained the State's objection to his cross examination of Officer Evans concerning the effect of using too much fingerprint powder in "dusting" the print before lifting.

Officer Evans was not qualified as an expert witness. Other competent testimony revealed that, a person with no prior training could be taught to lift fingerprints with 10 or 15 minutes' instruction.

■ It is a basic principle of the law of evidence that generally, opinion evidence of a non-expert is not admissible. D. Paine, *Tennessee Law of Evidence*, § 168, page 186. The question as to the effect of using excessive powder called for the witness's opinion. The opinion of Officer Evans comes within no exception to this general rule.

■ Moreover, the hypothetical assumed a fact not in evidence; that is, that excessive powder was used. The evidence was also properly excluded for this reason. *Griffin v. State*, 578 S.W.2d 654 (Tenn. Crim.App.1978).

Finally, the defendant complains of the trial court's failure to charge lesser included offenses of aggravated rape. He cites *Strader v. State*, 210 Tenn. 669, 362 S.W.2d 224 (1962). However, the *Strader* case and a host of others hold that it is not necessary to charge lesser included offenses where there is no evidence of such offenses and the charge would be a mere abstraction "upon hypothetical questions not suggested by proof."

■ The defendant asserts that issues are raised by the evidence with respect to lesser offenses but he does not point out this alleged evidence to us. Our review of the record reveals that there is none. This issue is overruled.

Finding no reversible error, we affirm the judgment of the trial court.

DUNCAN and CORNELIUS, JJ., concur.

DUNCAN, Judge, concurring.

I agree that the defendant's convictions should be affirmed. However, I am of the opinion that the evidence did not warrant the prosecuting attorney's argument regarding the missing witness rule.

There was evidence that an individual by the name of Allen Barrett came over to the police department and inspected the latent fingerprint lifted at the scene and the defendant's inked fingerprint. The evidence was that Mr. Barrett was a representative of the public defender's office. However, Mr. Barrett was not further identified, and there was no evidence that Mr. Barrett was a qualified fingerprint expert.

Nevertheless, the prosecuting attorney was permitted to argue the missing witness rule. He pointed out Mr. Barrett's absence, argued that Mr. Barrett was the defendant's "expert," and said Mr. Barrett was "not here to testify" because after he "looked at the prints," he would say "Yeah, that is Gene Crank."

Clearly, it was improper for the prosecuting attorney to argue that Mr. Barrett was an "expert," and for him to argue what Mr. Barrett's testimony would have been. *See State v. Francis*, 669 S.W.2d 85, 91 (Tenn. 1984). This argument was outside of the evidence.

Notwithstanding the above, I view the error here to be non-prejudicial. It had no effect on the jury's verdict. The evidence against the defendant was overwhelming.

I am satisfied beyond a reasonable doubt that this isolated comment was harmless. Therefore, I concur in affirming the defendant's convictions.