IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

APRIL 1996 SESSION

FILED

November 8, 1996

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| APPELLEE, | ) | |
| | ) | No. 01-C-01-9506-CR-00202 |
| | ) | |
| | ) | Davidson County |
| v. | ) | |
| | ) | J. Randall Wyatt, Jr., Judge |
| | ) | |
| | ) | (Robbery and Theft) |
| MARIO A. LAVENDER and ERIC L. HOBBS, | ) | |
| | ) | |
| APPELLANTS. | ) | |


FOR THE APPELLANTS:

FOR LAVENDER:

Deanna C. Bell
Attorney at Law
211 Third Avenue, North
Nashville, TN 37201

FOR HOBBS:

Jeffrey A. DeVasher
Assistant Public Defender
211 Union Street, Suite 1202
Nashville, TN 37201-5066
(Appeal Only)

Joan A. Lawson
Assistant Public Defender
211 Union Street, Suite 1202
Nashville, TN 37201-5066
(Trial Only)

OF COUNSEL:

Karl Dean
Metropolitan Public Defender
211 Union Street
Nashville, TN 37201-5066

FOR THE APPELLEE:

Charles W. Burson
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

Darian B. Taylor
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

Victor S. Johnson, III
District Attorney General
222 Second Avenue, South
Nashville, TN 37201-1649

Nicholas D. Bailey
Assistant District Attorney General
222 Second Avenue, South
Nashville, TN 37201-1649

Charles Carpenter
Assistant District Attorney General
222 Second Avenue, South
Nashville, TN 37201-1649


OPINION FILED:_____

AFFIRMED

Joe B. Jones, Presiding Judge

**O P I N I O N**

The appellants, Mario A. Lavender and Eric Hobbs, were found guilty of two counts of robbery, a Class C felony, and one count of theft over $1,000, a Class D felony, by a jury of their peers. The trial court found that Lavender was a standard offender and imposed Range I sentences as follows: (1) count 1, robbery, confinement for six (6) years in the Department of Correction, (2) count 2, robbery, confinement for six (6) years in the Department of Correction, and (3) count 4, theft, confinement for four (4) years in the Department of Correction. The trial court found that Hobbs was a multiple offender and imposed the following Range II sentences: (1) count 1, robbery, confinement for ten (10) years in the Department of Correction, (2) count 2, robbery, confinement for ten (10) years in the Department of Correction, and (3) count 4, theft, confinement for four (4) years in the Department of Correction. The trial court ordered that the sentences are to be served consecutively. The effective sentence for Lavender is sixteen (16) years, and the effective sentence for Hobbs is twenty-four (24) years. In this Court, both Lavender and Hobbs contend that the sentences imposed by the trial court are excessive. Hobbs also contends that the trial court committed error of prejudicial dimensions by (a) denying his motion to suppress a statement he made to police and (b) denying his motion in limine, which sought to deny the State of Tennessee the right to use his prior convictions to impeach him if he opted to testify. After a thorough review of the record, the briefs submitted by the parties, and the law applicable to the issues presented for review, it is the opinion of this Court that the judgment of the trial court should be affirmed.

During the early morning hours of January 3, 1994, the Wilson family was awakened when they heard noises outside of their residence. Mr. Wilson looked through a window to investigate the source of the noise. He saw two African-American males standing outside his residence. When he illuminated the floodlights outside his residence, the two men ran across the street and were last seen entering a ditch. Police officers were summoned. They patrolled the area and, noticing nothing suspicious, departed.

A few minutes later Lavender and Hobbs entered the Newbill residence, which was located across the street from the Wilsons' residence. They used a tire iron to open the

2

sliding doors at the rear of the residence. Mr. Newbill was awakened by one of the appellants. The intruder told Mr. Newbill to turn and face the wall or he would "blow [his] brains out." He felt something sticking him in the back. He "assumed it was a gun." The perpetrator told Mr. Newbill to put a pillow over his head. He followed the directions given to him. Mrs. Newbill was in another bedroom. She too was awakened by one of the appellants. She was told not to look at the perpetrator. She was also directed to place a pillow over her head. She was told that if she did not cooperate, they would kill her husband. The appellants spent in excess of an hour inside the Newbill residence. They took numerous items of jewelry, guns, and a large sum of cash. They loaded these items into Mr. Newbill's pickup truck and drove away in the truck. The appellants took in excess of $10,000 in cash and personal property from the residence. The pickup had a value of $9,600.

The Newbills testified the two men in their residence "sounded black." Mr. Newbill saw the wrist of one of the appellants when he was given a glass of water. The man's skin appeared to be black. He could tell this appellant was wearing gloves.

The Newbills subsequently notified the police. They told the police what occurred and what was taken from the residence. The officers initiated a broadcast describing the pickup truck and the items stolen. The broadcast indicated two men committed the offense.

A police officer saw the pickup truck and followed it. Other officers entered the pursuit. The appellants subsequently slowed the vehicle, exited the vehicle while it was still moving, and ran in different directions. The pickup truck struck a telephone pole. The officers began pursuing the appellants on foot. Both Lavender and Hobbs dropped a pistol as they were attempting to evade the officers.

Two police search dogs were summoned. One of the dogs found Lavender underneath a motor vehicle a short distance from the point where he exited the pickup truck. The second dog located Hobbs in a utility building behind a nearby residence.

3

## I.

When Hobbs resisted arrest and attempted to escape from the officers, the police dog was allowed to subdue him. He sustained several dog bite wounds. Before Officer Claude Mann transported Hobbs to the hospital, he advised him of the Miranda rights. Officer Mann stated Hobbs was "moaning and groaning" at the time. When Officer Mann asked Hobbs if he understood his rights, the appellant answered: "Okay, man, I -- know the deal, I know the deal, I know the deal." Officer Mann testified Hobbs, who had several previous arrests and convictions, understood his rights.

Once Hobbs was in a treatment room, Officer Mann removed the handcuffs and assisted a nurse in removing his clothing so she could view the wounds. A "wad of money" fell from Hobbs's pants. A second "wad of money" was found in his underwear. Since the broadcast stated jewelry had been taken in the robbery, Officer Mann removed three gold chains from Hobbs's neck. When Officer Mann asked Hobbs where he obtained the jewelry, Hobbs, an African-American, told Mann the jewelry belonged to his uncle. Officer Mann opened a locket attached to one of the chains. He found a picture of an elderly Caucasian man inside the locket. When Officer Mann advised Hobbs about this discovery, Hobbs appeared shocked.

The only evidence of the injuries sustained by Hobbs was given by Officer Mann. He testified Hobbs sustained "several" dog bites. He also testified Hobbs was in a "little pain" when he transported him to the hospital.

In this Court, Hobbs asserts that the ruling of the trial court was clearly erroneous. He argues he was in "such physical pain from the dog bite wounds that he could neither understand his right not to make statements nor knowingly and voluntarily waive his rights."

The standard of review applicable to suppression issues is well-established. When a trial court makes a finding of facts at the conclusion of a suppression hearing, the facts found by the trial court are afforded the weight of a jury verdict.[1] As a result, these facts

---

[1]State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994); State v. Makoka, 885 S.W.2d 366, 371-72 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Gentry, 881 S.W.2d 1, 5 (Tenn. Crim. App. 1993), per. app. denied (Tenn. 1994); State v. Ray, 880 S.W.2d 700, 704 (Tenn. Crim. App. 1992), per. app. denied (Tenn. 1993); State v.
(continued...)

are binding upon this Court if the evidence contained in the record does not preponderate against these facts.[2]  This standard has been applied to a variety of confession issues since 1958.[3]  The appellate courts have applied this standard when the issue presented for review is whether the accused intelligently and voluntarily gave the statement in question.[4]

In this case, Hobbs has failed to establish the evidence adduced at the suppression hearing preponderates against the trial court's finding of facts.  First, the only evidence introduced at the hearing was the testimony of Officer Mann.  The officer testified  he advised Hobbs of his Miranda rights, and it was clear to him Hobbs understood these rights.  The trial court found Hobbs did understand the Miranda warnings.  The trial court observed this was not the first time Hobbs had been advised of his rights.  Officer Mann also testified Hobbs was bitten "several times,"  he was "moaning and groaning," and he was in a "little pain."  This evidence does not establish that the wounds had a sufficient or overbearing effect on Hobbs's capacity to knowingly and understandingly waive his right to remain silent.[5]

This issue is without merit.

---

(...continued)
Adams, 859 S.W.2d 359, 362 (Tenn. Crim. App. 1992), per. app. denied (Tenn. 1993); State v. Woods., 806 S.W.2d 205, 208 (Tenn. Crim. App. 1990), cert. denied, 502 U.S. 1079, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992);  State v. Aucoin, 756 S.W.2d 705, 710 (Tenn. Crim. App. 1988), cert. denied, 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 845 (1989).

[2]Stephenson, 878 S.W.2d at 544;  State v. Smith, 868 S.W.2d 561, 570 (Tenn. 1993);  State v. Bobo, 727 S.W.2d 945, 948 (Tenn.), cert. denied, 484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987);  State v. O'Guinn, 709 S.W.2d 561, 565-66 (Tenn.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986);  State v. Harbison, 704 S.W.2d 314, 318 (Tenn. 1986);  State v. Kelly, 603 S.W.2d 726, 729 (Tenn. 1980); Makoka, 885 S.W.2d at 371-72;  Ray, 880 S.W.2d at 704;  Adams, 859 S.W.2d at 362; Aucoin, 756 S.W.2d at 710.

[3]Wooten v. State, 203 Tenn. 473, 481, 314 S.W.2d 1, 4-5 (1958).

[4]Stephenson, 878 S.W.2d at 544.

[5]See State v. Middlebrooks, 840 S.W.2d 317, 327 (Tenn. 1992); State v. Workman, 667 S.W.2d 44, 48 (Tenn.), cert. denied, 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984).

**II.**

Hobbs filed a motion in limine asking the trial court to "conduct a hearing outside the presence of the jury to determine the admissibility of any character or other crime evidence the State may seek to introduce at the trial of this cause." The trial court conducted a hearing prior to trial. Although this motion does not address the admissibility of Hobbs's prior convictions to impeach him as a witness, defense counsel argued the State of Tennessee should not be permitted to use Hobbs's prior convictions to impeach him if he opted to testify. The record reflects Hobbs had been convicted of the following felonies:

(a)  theft over $10,000 on July 22, 1991. The offense was committed on February 20, 1991, in Madison County;

(b)  aggravated robbery on December 10, 1991. The offense was committed on August 21, 1991 in Madison County;

(c)  aggravated burglary on December 10, 1991. The offense was committed on August 22, 1991, in Madison County; and

(d)  theft over $1,000 on December 10, 1991. The offense was committed on August 22, 1991, in Madison County.

The trial court ruled these felonies could be used to impeach Hobbs if he testified in support of his defense. The court found the probative value of these offenses far exceeded any prejudicial effect that these convictions might have on the trier of fact. Hobbs did not testify in support of his defense.

Hobbs contends "the trial court erred in ruling that [his] prior felony convictions would be admissible for impeachment purposes." He argues "the provisions of the Tennessee Rules of Evidence do not support the admission of the convictions under the circumstances of this case, and that the trial court's ruling deprived him of his right to a fair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 9 of the Tennessee Constitution." He predicates his argument on the similarity of these offenses to the offenses alleged in the indictment.

The State of Tennessee may use a prior conviction to impeach an accused if the conviction meets the criteria established by Rule 609 of the Tennessee Rules of Evidence. This rule states in part:

6

(a) GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:

* * *

(2) The crime must be punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

(b) TIME LIMIT. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and the commencement of the action or prosecution; if the witness was not confined the ten-year period is measured from the date of conviction rather than release. . . .

According to this rule, the State of Tennessee may use a prior adult conviction to impeach the testimony of an accused in a criminal prosecution if (a) the conviction was for a crime that is punishable by death or imprisonment in excess of one (1) year or a misdemeanor involving dishonesty or a false statement, (b) less than ten years have elapsed between the date the accused was released from confinement and the commencement of the prosecution, (c) the State of Tennessee gave reasonable written notice of the particular conviction or convictions it intends to use to impeach the accused prior to trial, and (d) the trial court finds the probative value of the felony or misdemeanor on the issue of credibility outweighs its unfair prejudicial effect.[6]

In this case, the first three requirements, (a) through (c), have been satisfied. Thus, the only issue which this Court must resolve is whether the probative value of the four felonies outweighed their unfair prejudicial effect due to the similarity between these

_____

[6]See State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992).

7

convictions and the offenses alleged in the indictment.

In determining whether the probative value of a felony used to impeach an accused outweighs its unfair prejudicial effect on the issues to be resolved by the jury, a trial court should (a) "assess the similarity between the crime on trial and the crime underlying the impeaching conviction" and (b) "analyze the relevance the impeaching conviction has to the issue of credibility."[7] When the analysis is applied in this case, it is clear the trial court did not abuse its discretion in ruling the four felonies could be used to impeach Hobbs if he opted to testify in support of his defense.[8]

The mere fact a prior conviction of the accused is identical, or similar in nature, to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach the accused as a witness.[9] The appellate courts of this state have held the offenses of robbery, burglary, and theft are "highly probative of credibility"[10] because these crimes involve dishonesty.[11] Thus, the appellate courts have held that convictions for these felonies may be used to impeach an accused being tried for one or more of these offenses absent circumstances which require a different result.[12]

_____

[7]N. Cohen, D. Paine, and S. Sheppeard, Tennessee Law of Evidence, § 609.9 at p. 288 (2nd ed. 1990); see Farmer, 841 S.W.2d at 839.

[8]It is a well-established rule of law that questions concerning the admissibility of evidence rest within the sound discretion of the trial court; and an appellate court will not interfere with the exercise of this discretion absent a clear abuse appearing on the face of the record. Stephenson, 878 S.W.2d at 542; State v. Van Tran, 864 S.W.2d 465, 477 (Tenn. 1993), cert. denied, _____ U.S. ____, 114 S.Ct. 1577, 128 L.Ed.2d 220 (1994); State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); State v. Baker, 751 S.W.2d 154, 163 (Tenn.. Crim. App.), per. app. denied (Tenn. 1987).

[9]See State v. Miller, 737 S.W.2d 556, 560 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

[10]State v. Crank, 721 S.W.2d 264, 266 (Tenn. Crim. App.), per. app. denied (Tenn. 1986).

[11]State v. Tune, 872 S.W.2d 922, 927 (Tenn. Crim. App.), per. app. denied (Tenn. 1993)(burglary); Miller, 737 S.W.2d at 560(burglary); Crank, 721 S.W.2d at 266 (burglary); State v. Bowers, 673 S.W.2d 887, 889 (Tenn. Crim. App.), per. app. denied (Tenn. 1984) (burglary); State v. Stafford, 670 S.W.2d 243, 245 (Tenn. Crim. App.), per. app. denied (Tenn. 1984) (robbery and burglary); State v. Cole, 665 S.W.2d 407, 410 (Tenn. Crim. App. 1983) (burglary); Price v. State, 589 S.W.2d 929, 931-32 (Tenn. Crim. App.), cert. denied (Tenn. 1979) (burglary and grand larceny).

[12]State v. Goad, 692 S.W.2d 32, 37 (Tenn. Crim. App.), per. app. denied (Tenn. 1985) (robbery conviction admissible to impeach accused in a prosecution for armed robbery); State v. Norris, 684 S.W.2d 650, 654 (Tenn. Crim. App. 1984), per. app. denied

(continued...)

Hobbs's reliance on Long v. State[13] and State v. Farmer[14] is misplaced. In Long, a conviction for second degree murder was used to impeach the accused in a prosecution for assault with intent to commit murder in the first degree. In Farmer, a conviction for assault with intent to commit manslaughter was used to impeach the accused in a prosecution for murder in the second degree. In both cases, this Court held the prejudicial effect of introducing the prior convictions outweighed the probative value of the convictions. As this Court said in Farmer, the probative value of these convictions was "slight or nonexistent."[15] In this case, the convictions are "particularly probative of credibility."[16]

This issue is without merit.

## III.

Lavender and Hobbs challenge the length and method of serving the sentences imposed by the trial court. Lavender contends the trial court committed error of prejudicial dimensions by imposing the maximum sentences within the appropriate range and requiring the sentences to be served consecutively. Hobbs contends that the trial court committed prejudicial error by imposing the maximum sentences for robbery and requiring him to serve the sentences consecutively.

## A.

---

(...continued)
(Tenn. 1985) (armed robbery conviction admissible to impeach accused in a prosecution for armed robbery); State v. Cole, 665 S.W.2d 407, 410 (Tenn. Crim. App. 1983), per. app. denied (Tenn. 1984) (burglary convictions admissible to impeach accused in a prosecution for burglary); State v. Davis, 649 S.W.2d 12, 13 (Tenn. Crim. App. 1982), per. app. denied (Tenn. 1983) (bank robbery conviction admissible to impeach accused in a prosecution for bank robbery); State v. Fluellen, 626 S.W.2d 299, 300 (Tenn. Crim. App.), per. app. denied (Tenn. 1981) (armed robbery conviction admissible to impeach accused in a prosecution for armed robbery).

[13]607 S.W.2d 482 (Tenn. Crim. App.), per. app. denied (Tenn. 1980).

[14]841 S.W.2d 837 (Tenn. Crim. App.), per. app. denied (Tenn. 1992).

[15]841 S.W.2d at 840

[16]Tune, 872 S.W.2d at 927.

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct."[17] This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."[18] The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts.[19] However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination is based upon the witnesses' demeanor, appearance, and vocal inflection.

In conducting a de novo review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment.[20]

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences imposed by the trial court were erroneous.[21]

---

[17]Tenn. Code Ann. § 40-35-401(d).

[18]State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

[19]State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993).

[20]See Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

[21]Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311.

**B.**

The trial court found the evidence supported four enhancement factors, and the court used these factors to enhance the appellants' sentences within the appropriate range. The enhancement factors used to increase these sentences were: (a) they had a previous history of criminal convictions and criminal behavior,[22] (b) they treated or allowed the victim to be treated with exceptional cruelty during the commission of the offense,[23] (c) they had no hesitation about committing a crime when the risk to human life was high,[24] and (d) they committed the crime under circumstances where the potential for bodily injury to a victim was great.[25] The trial court found there were no mitigating circumstances supported by the record.

Lavender and Hobbs contend the trial court should not have used enhancement factors (5), (10), and (16) to enhance their respective sentences. Lavender also contends the trial court should have applied mitigating factor (6) because of his age at the time he committed the crimes in question.[26]

The record reflects that Lavender was convicted of two offenses before the date in question. He was convicted of selling a controlled substance and possession of a controlled substance. Hobbs had been convicted of at least four felonies and two misdemeanors. Thus, the trial court properly used enhancement factor (1) to enhance the appellants' sentences.

Lavender and Hobbs make a strong argument that enhancement factors (5), (10), and (16) were erroneously applied by the trial court to enhance their sentences within the appropriate range. They take the position factors (10) and (16) should not be applied when an accused is convicted of robbery. While this Court has held on numerous occasions these factors should not be used to enhance a sentence in a robbery case, this is not an

---

[22]Tenn. Code Ann. § 40-35-114(1).

[23]Tenn. Code Ann. § 40-35-114(5).

[24]Tenn. Code Ann. § 40-35-114(10).

[25]Tenn. Code Ann. § 40-35-114(16).

[26]Tenn. Code Ann. § 40-35-113(6).

ironclad rule which applies in every robbery case. To the contrary, whether an enhancement factor should be used to enhance a sentence depends on the elements of the offense and the evidence adduced at the trial and sentencing hearing.

In this case, the victims were senior citizens. Mr. Newbill was retired. The record establishes Mr. Newbill suffered from heart disease. It was serious enough for Mr. Newbill to take medication to avoid having a heart attack. Due to the shock of being awakened during the night, the stress of being told he would be shot if he did not cooperate, and living through this ordeal for approximately an hour, Mr. Newbill started having chest pains and shortness of breath, classic signs of an ensuing heart attack. Mr. Newbill told the appellants he was a heart patient, he was suffering the symptoms of a heart attack, and he was going to be sick. The appellants would not permit him to get out of bed. Consequently, he did not have access to his medication. Mr. Newbill took a nitroglycerine tablet to alleviate the pain and avoid an ensuing heart attack after the appellants exited the residence.

While it is true the appellants did not know who resided in the residence or the condition of their health, this fact neither excuses nor mitigates the effect their conduct had upon the Newbills. When they entered the Newbill residence, they assumed the risk that a victim may be advanced in age, the victim may have a serious, life-threatening illness, and their conduct could aggravate this medical condition and cause life-threatening circumstances.

Based upon the facts of this case, the trial court properly applied enhancement factors (5), (10), and (16). Neither factor constitutes an element of either robbery or theft.

The trial court should have applied enhancement factor (8) to increase Hobbs's sentences within the appropriate range.[27] The presentence report establishes that Hobbs was granted probation in Madison County. This probation was revoked when he was arrested for and convicted of several new crimes.

The trial court properly rejected mitigating factor (6).[28] Lavender was 27 years of age when he was sentenced. He has worked approximately four months since he left high

[27]Tenn. Code Ann. § 40-35-114(8).

[28]Tenn. Code Ann. § 40-35-113(6).

12

school in the eleventh grade. The record is devoid of evidence that Lavender's youth had any effect on his criminal conduct. To the contrary, he was convicted of two drug offenses before committing the crimes in question.

This issue is without merit.

## C.

The trial court ordered that the appellants' sentences are to be served consecutively. It found Hobbs to be "an offender whose criminal activity is extensive,"[29] and both Lavender and Hobbs to be "dangerous offender[s] whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high."[30] The appellants contend the sentences should be served concurrently.

An accused may be required to serve multiple sentences consecutively if (a) the accused meets the criteria for consecutive sentencing set forth in the applicable statute,[31] (b) the effective sentence imposed reasonably relates to the severity of the crimes committed by the accused,[32] and (c) an extended period of incarceration is necessary to protect the public from the accused's future criminal conduct.[33] The State of Tennessee has the burden of establishing these factors before an accused can be required to serve multiple sentences consecutively.[34]

Hobbs qualifies for consecutive sentencing because his "record of criminal activity is extensive."[35] Between February 1, 1991 and December 10, 1991, he was convicted of aggravated robbery, aggravated burglary, theft of property in excess of $10,000, two counts, evading arrest, assault, resisting arrest, and impersonation. He was required to

---

[29]Tenn. Code Ann. § 40-35-115(b)(2).

[30]Tenn. Code Ann. § 40-35-115(b)(4).

[31]Tenn. Code Ann. § 40-35-115.

[32]State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

[33]Wilkerson, 905 S.W.2d at 939.

[34]State v. Barker, 642 S.W.2d 735, 739 (Tenn. Crim. App. 1982).

[35]Tenn. Code Ann. § 40-35-115(b)(2).

13

serve the sentences for the felony convictions in the Department of Correction. Two of the sentences were served consecutively. The offenses in question occurred on January 3, 1994. It is obvious that Hobbs committed the present offenses shortly after he was released from the Department of Correction.

In his brief, Hobbs contends his prior convictions cannot be the basis of an enhanced sentence and a consecutive sentence. This argument ignores the reported decisions which hold the contrary. This Court has held on numerous occasions the prior convictions of an accused can be used to establish the appropriate range, or enhance a sentence within the appropriate range, and justify consecutive sentences.[36]

Both appellants qualify for consecutive sentencing because their "behavior indicates [that they had] little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high."[37] The offense of robbery is a "crime in which the risk to human life is high." In this case, the conduct of the appellants towards Mr. Newbill established they had absolutely "no regard for human life."

Mr. Newbill suffered from heart disease. The shock of being awakened in his home and the fear instilled in him by the appellants caused him to suffer chest pains and shortness of breath. These are common symptoms of an approaching or actual heart attack. Mr. Newbill explained to one of the appellants he had a heart condition, he was suffering from these symptoms, and he was about to become sick. The appellants would not permit Mr. Newbill to get out of his bed. As a result, he did not have access to his medication. However, he was given a glass of water. He testified he was in "bad shape." Just as soon as the appellants exited the residence, Mr. Newbill took a nitroglycerine tablet to alleviate the pain and to avoid having a heart attack. In short, the appellants did not care if Mr. Newbill lived or died.

The evidence strongly suggests that the appellants were prowling the neighborhood looking for a residence from which to steal property and a vehicle. Mr. Wilson, who lived

---

[36]See State v. Franklin, 919 S.W.2d 362, 366 (Tenn. Crim. App. 1995), per. app. denied (Tenn. 1996); State v. Marshall, 888 S.W.2d 786, 788 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Meeks, 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993), cert. denied, ____ U.S. ____, 114 S.Ct. 1200, 127 L.Ed.2d 548 (1994); State v. Davis, 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991), per. app. denied (Tenn. 1992).

[37]Tenn. Code Ann. § 40-35-115(b)(4).

14

across the street from the Newbills, heard noises. He turned on the outside floodlights and saw two black men running away. They ran across the street and disappeared in a ditch. Most people would be afraid to engage in other criminal activity for fear the police may be summoned and find them in the neighborhood. Not the appellants. They entered the Newbills' residence and the remainder of the story is history.

What occurred after the police officers initiated their pursuit of Mr. Newbill's truck also establishes this ground for consecutive sentencing. When the officers initiated their pursuit, the appellants reduced the speed of the truck and exited while the truck was still moving. The truck struck a pole. The truck could have struck someone preparing to walk across the street, someone en route to work, or it could have struck a residence and killed the sleeping occupants.

The damage to the vehicle indicates the truck was still traveling at a relatively high rate of speed. The impact completely demolished the truck. The insurance company found the truck was beyond repair, and it paid Mr. Newbill $9,600, the fair market value of his 1991 model truck.

The lengthy sentences imposed by the trial court were appropriate. These sentences "reasonably relate to the severity of the offenses" committed by the appellants.[38] Also, these sentences are "necessary to protect the public against further criminal conduct" at the hands of the appellants.[39] Both of the appellants have prior criminal records, and they have been required to serve jail or prison sentences for the past transgressions. Obviously, the shorter sentences did not deter the appellants from committing the crimes in this case.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:

_____

[38]Wilkerson, 905 S.W.2d at 939.

[39]Wilkerson, 905 S.W.2d at 939.

_____

JOHN H. PEAY, JUDGE


_____

DAVID G. HAYES, JUDGE