# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 13, 2005

## STATE OF TENNESSEE v. LAMARIO SUMNER

**Appeal from the Criminal Court for Shelby County**
**No. 03-07118      Chris Craft, Judge**

---

### No. W2005-00122-CCA-R3-CD  - Filed January 6, 2006

---

The Appellant, Lamario Sumner, was convicted by a Shelby County jury of two counts of aggravated robbery and received an effective forty-year sentence. On appeal, Sumner has raised five issues for our review: (1) whether Sumner's prior conviction for aggravated robbery was admissible for impeachment purposes; (2) whether the trial court erred by precluding examination of the police investigator regarding exculpatory statements made by Sumner; (3) whether the elements of a prior felony conviction, introduced solely for purposes of impeachment, may be developed through examination of the witness; (4) whether the trial court properly responded to a jury question regarding criminal responsibility; and (5) whether the evidence is sufficient to support the convictions. After review of the record, we find no error and affirm the convictions.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P. J., and THOMAS T. WOODALL, J., joined.

Mark Mesler, Memphis, Tennessee, for the Appellant, Lamario Sumner.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michelle Parks, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On April 26, 2003, the two victims, Maria Lawson and Angel Silva, met at Memphis de Noche, a local Memphis club. After a brief conversation, the two went outside to Lawson's Jeep Cherokee and drove behind the club in order to "have sex." Lawson admitted to prostituting at the club. Lawson was seated in the driver's seat of the vehicle, and Silva was standing outside the passenger door when a car with two black males pulled up behind Lawson's vehicle. The passenger of the vehicle, later identified as the Appellant, exited the car and brandishing a pistol, approached

Silva and demanded money. Silva removed his wallet from his pocket and threw it to the ground. As the Appellant bent to retrieve the wallet, Silva fled and hid between two parked cars. The Appellant then approached Lawson's side of the vehicle, demanding that she surrender her keys to the vehicle. Lawson handed the Appellant the keys, but as he attempted to enter the vehicle, she "hollered real loud." At this point, rescue-minded patrons of the bar emerged. The Appellant fled the Jeep Cherokee, taking Lawson's purse with him, and he began firing his gun at the oncoming patrons. One or more of the patrons, who were also armed, returned fire. After the gunfire stopped, Silva emerged from his hiding spot and proceeded back around the building. The Appellant, who was still present at this time, shot Silva in the chest. The Appellant then fled the scene on foot. The driver of the vehicle, who had remained in the vehicle during the commission of the offenses, drove away.

A club security guard escorted Lawson as she moved her vehicle to a more secure location. During the process of moving her vehicle, Lawson found the Appellant's driver license in the floorboard. When the police arrived on the scene, Lawson and the security guard returned to the scene, and Lawson gave the driver license to an officer, identifying the man as the perpetrator.

Silva was transported to a nearby hospital where he underwent surgery for a gunshot wound to the chest. After his discharge, Silva was interviewed by the police through an interpreter, and he identified the Appellant as his assailant from a photo line-up.

On October 14, 2003, a Shelby County grand jury indicted the Appellant for the especially aggravated robbery of Silva and the aggravated robbery of Lawson. On February 2, 2004, the State filed its notice of intent to use three of the Appellant's prior felony convictions for impeachment purposes if he chose to testify. Of the three, the trial court ruled that only a prior aggravated robbery conviction would be admissible to impeach. The Appellant's trial began in September 2004, and, after hearing the evidence presented, a jury found the Appellant guilty of the lesser offense of aggravated robbery of Silva and of the aggravated robbery of Lawson as charged. Following a hearing, the Appellant received two consecutive twenty-year sentences in the Department of Correction.

## Analysis

### I. Impeachment by Prior Conviction

First, the Appellant contends that the trial court erred in its pre-trial ruling that the State would be allowed to use a prior aggravated robbery conviction to impeach him. Specifically, he contends it was error as he was "on trial for that identical crime and the facts underlying those prior convictions were virtually identical to the case at bar."

The general rule is that prior convictions can be used to impeach the credibility of the accused in a criminal case who takes the stand in his own defense. *See* Tenn. R. Evid. 609. However, before the State is permitted to impeach an accused's credibility, certain conditions and

procedures must be satisfied. The prior conviction must be for a crime punishable by incarceration in excess of one year or for a crime involving dishonesty or false statement. Tenn. R. Evid. 609(a)(2); *see also State v. Blanton*, 926 S.W.2d 953, 959 (Tenn. Crim. App. 1996). A trial court's determination under Rule 609 will not be reversed unless it appears from the record that the court abused its discretion. *State v. Mixon*, 983 S.W.2d 661, 675 (Tenn. 1999).

Following a pre-trial hearing, the trial court ruled that two prior attempted aggravated kidnapping convictions were not admissible for impeachment purposes but held that the State could impeach the Appellant with a prior aggravated robbery conviction. The Appellant concedes that the threshold requirements of Rule 609 were met in that robbery is a crime involving dishonesty, the conviction was not more than ten years old as it occurred in 1998, and the State gave proper notice of its intent to impeach. Indeed, the Appellant asserts only that the court erred in concluding that the probative value of the conviction outweighed its prejudicial effect.

Two criteria are especially relevant in determining whether the probative value of a conviction on the issue of credibility outweighs its unfair prejudicial effect upon the substantive issues: (1) the impeaching conviction's relevance as to credibility; and (2) the impeaching conviction's similarity to the charged offense. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003) (citing *Mixon*, 983 S.W.2d at 674). A trial court should first analyze whether the impeaching conviction is relevant to the issue of credibility. *Id*. Rule 609 suggests that the commission of any felony is "generally probative" of a criminal defendant's credibility. *Id*. at 371 (citing *State v. Walker*, 29 S.W.3d 885, 890 (Tenn. Crim. App. 1999)). However, our supreme court has previously rejected a *per se* rule that permits impeachment by any and all felony convictions. *Id*. at 371. Second, the court must consider that when an impeaching conviction is substantially similar to the crime for which the defendant is being tried, there is a danger that a juror will erroneously utilize the impeaching conviction as propensity evidence of guilt and conclude that because the defendant committed a similar offense, he or she is probably guilty of the offense charged. *Mixon*, 983 S.W.2d at 674. Accordingly, the unfair prejudicial effect of an impeaching conviction on the substantive issues greatly increases if the impeaching conviction is substantially similar to the crime for which the defendant is being tried. *Id*. A prior felony conviction must be analyzed to determine whether it is sufficiently probative of credibility to outweigh any unfair prejudicial effect it may have on the substantive issue of the case. *Id*.

As argued by the State, this court has previously held that crimes involving theft, which like robbery involve a taking of property, are crimes involving dishonesty and are "highly probative of credibility." *State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997); *see also State v. Crank*, 721 S.W.2d 264, 266-67 (Tenn. 1986); *State v. Tune*, 872 S.W.2d 922, 927 (Tenn. Crim. App. 1993). As such, prior convictions for these felonies may be used to impeach a defendant on trial for an offense involving theft. *Baker*, 956 S.W.2d at 15. Moreover, "the fact that a prior conviction involves a similar crime for which the defendant is being tried does not automatically require its exclusion." *State v. Blevins*, 968 S.W.2d 888, 893 (Tenn. Crim. App. 1997).

In this case, the trial court determined that the Appellant's prior aggravated robbery conviction was extremely probative of his credibility. As set forth above, robbery offenses involve dishonesty and, therefore, are probative of the perpetrator's credibility. *See State v. Stout*, 46 S.W.3d 689, 716 (Tenn. 2001). From the record, we glean that the trial court then performed the necessary balancing test, noting that "although [the prior conviction] is similar to the case on trial, it's extremely probative to whether or not he would lie under oath." Moreover, the court concluded that the similarity in the crimes and any resulting prejudicial effect was outweighed by the probative value. Finding no abuse of discretion, this issue is without merit.

## II. Admission of Appellant's Self-Serving Statement

Next, the Appellant argues that the trial court erred by ruling that should the defense call lead robbery investigator J. T. Max as a witness, the defense would not be permitted to question Max concerning certain statements made by the Appellant to Max. The Appellant's brief recites that on the morning of trial, the prosecutor advised trial counsel that the State would not be calling Investigator Max as a witness. As gleaned from the hearing of the motion for new trial, during Max's interrogation of the Appellant, the Appellant denied any involvement in the robberies and shooting. Apparently, the Appellant did admit, however, that he was at the club earlier and while there had somehow lost his driver license. According to the Appellant's brief, the trial court ruled that should the defense call Max as a witness, Max would be permitted to testify that the Appellant admitted to being at the club earlier, but Max would not be permitted to testify that the Appellant stated that he had lost his driver license during this earlier visit. The trial court concluded that the latter statement was "self serving" and inadmissible hearsay.

The State argues that while the above facts appear to be a correct "recounting" of those "discussed" at the motion for new trial, the transcript does not provide an unbiased record of what actually transpired at the original motion hearing.

The transcript of the original motion hearing is not included in the record. As such, we are without the facts relied upon by the trial court in making its ruling, the factual findings of the court, or the court's ruling on the motion as originally entered. In view of the omission, we would be forced to assume facts which may or may not be an accurate representation of those facts relied upon at the hearing. Pursuant to Tenn. R. App. P. 24(b), an appellant has a duty to prepare an adequate record in order to allow meaningful review on appeal. In the absence of an adequate record, this court must presume that the trial court's ruling was correct. *State v. Bibbs*, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991). We are unable to conclude that the record before us presents a "fair, accurate and complete account of what transpired" at the motion hearing. *See* Tenn. R. App. P. 24(a). Accordingly, the issue is waived.

## III. Impeachment Examination of Witness

Third, the Appellant contends that the trial court erred by refusing to allow counsel, during his impeachment of Lawson by introducing her conviction for aggravated assault, to question her

regarding the elements of that offense.  The State argues that the trial court properly sustained its objection because any testimony regarding the underlying facts of a witness's prior convictions are inadmissible.

The following colloquy occurred during cross-examination of the victim Lawson:

Q      Ms. Lawson, you're a convicted felon; right?

A      Yes, sir.

Q      You've been convicted of Aggravated Assault - -

A      Yes, sir.

Q      - - right? Aggravated Assault is causing fear or injury to somebody either - -

At this point, the State objected to the line of questioning on grounds that the Appellant's counsel was going into the details of the elements of the offense.  The court sustained the objection, noting that "[u]nder 609 you can't really go into the facts of what they did . . . And so I think, you know, you can talk about the - - it was a felony and it was a conviction.  But we can't go into types of cases where people can be convicted of that."

Tennessee Rule of Evidence 609 allows for the admission of prior convictions for the purpose of impeachment provided that certain conditions are met.  However, our supreme court has concluded that "'evidence' of a prior conviction admissible under Rule 609(a) is limited to the fact of a former conviction and the crime that was committed."  *State v. Taylor*, 993 S.W.2d 33, 34 (Tenn. 1999).  Rule 609 is based on the premise that the trier of fact needs to be informed of prior convictions in order to evaluate a witness's credibility.  *Id*. at 35.  Identifying the nature of the prior conviction avoids confusion and speculation on the part of the jury and permits the jury to properly evaluate the conviction's probative value on the issue of credibility.  *Id*.  We conclude that reference to the prior conviction by name, here aggravated assault, satisfies these requirements in that confusion and speculation would be avoided and the jury would be able to properly evaluate the conviction's probative value. *See State v. Michael Pittman*, No. W2000-01027-CCA-R3-CD (Tenn. Crim. App. at Jackson, May 31, 2001).

The Appellant relies upon *State v. Galmore*, 994 S.W.2d 120 (Tenn. 1999), which held that where a trial court made limited reference to a prior conviction as "a felony" without further specific identification as to the type of felony, that not identifying the felony permits the jury to speculate on the nature of the prior conviction.  The Appellant analogizes that situation to the present issue, arguing that "if our courts do not want juries to speculate about the nature of a prior felony conviction, then juries should be allowed to know the definitions underlying those felonies.  Like with unnamed felonies, simply identifying a felony (without it's [sic] definition) would provide the

jurors with inadequate information to properly weigh the conviction's probative value as impeaching evidence." We disagree.

Reviewing the court's finding pursuant to the abuse of discretion standard, *see State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004), we find the trial court's decision proper. The Appellant was allowed to elicit from the victim the fact that she had been convicted of aggravated assault. Thus, the fact that the crime was committed and the nature of the crime were placed before the jury. This clearly complies with the mandate of *Taylor,* which prescribed that only the fact of a prior conviction and that the crime was committed be placed before the jury. Contrary to the Appellant's assertion that the jury should be informed of the elements of the prior conviction, nothing in this rule requires that the elements of an offense be identified to the finder of fact. This issue is without merit.

## IV. Jury Question/Charge

At the close of proof, the trial court properly instructed the jury as to all relevant issues of the case, including criminal responsibility.[1] However, during jury deliberations, the jury submitted the following question:

> Re: Criminal Responsibility of Another. If we find Sumner guilty of the original robbery, must we also find him criminally responsible for the shooting of Silva, (if we believe a shooting is a natural and probable consequence of an armed robbery). i.e.: The law says a defendant "may" be held criminally responsible for subsequent actions of another. It doesn't say "must."

After conferring with the prosecutor and defense counsel, the trial court submitted the following supplemental instruction to the jury:

> So I'm going to give you this extra page in - - as an answer to your question. But you aren't to consider it more important than any other parts of the charge or less important. . . .
>
> . . . .
>
> Answer to you[r] question. The law makes the defendant criminally liable for the acts of confederates that are the natural and probable consequence of the crime in which the defendant participated. Extending criminal liability to secondary actors is reasonable as long as the crimes committed by others were the foreseeable result

---

[1] The trial court instructed the jury upon the theory of criminal responsibility for the conduct of another apparently based upon the fact that the victim, Silva, was unable to identify with certainty the person who shot him, although at trial he did identify the Appellant as the perpetrator of the robbery. Silva testified that as he came around the building, he was shot by a "black man."

of the consummation of the intended crime. However, before you find any defendant guilty of being criminally responsible for an offense committed by the conduct of another, you must find that all of the essential elements of the offense have been proven by the State beyond a reasonable doubt.

The above answer was a direct quote from *State v. Richmond*, 90 S.W.3d 648, 655 (Tenn. 2002), a case in which the Tennessee Supreme Court discussed criminal responsibility. The Appellant objected to the supplemental charge, asserting that the court, in answering the question, should only reread the portion of the jury charge regarding criminal responsibility. In support of his argument, the Appellant relies upon *Spencer v. A-1 Crane Service, Inc.*, 880 S.W.2d 938, 941 (Tenn. 1994), which states that "the only proper response by a trial judge to a question from the jury or an individual juror is to recall the jury, counsel, and parties into open court, hear the question, reinstruct the jury on the portion of the charge that responds to the question, if necessary, and make clear that the repeated instruction should not be considered as emphasis of that portion of the charge."

"[A] defendant has a constitutional right to a correct and complete charge of the law." *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). Generally, when reviewing jury instructions on appeal to determine whether they are erroneous, this court will review the charge in its entirety and read it as a whole. *State v. Stephenson*, 878 S.W.2d 530, 555 (Tenn. 1994). A charge shall be considered prejudicially erroneous if it fails to submit the legal issues fairly or if it misleads the jury as to the applicable law. *Graham v. State*, 547 S.W.2d 531 (Tenn. 1977); *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995). Additionally, the trial court has the authority to respond to jury questions with a supplemental instruction. *State v. Moore*, 751 S.W.2d 464, 467 (Tenn. Crim. App. 1988). While the better procedure is to admonish the jury not to place undue emphasis on the supplemental instruction and to consider it in conjunction with the entire charge, it is not necessarily reversible error to fail to do so. *State v. Chance*, 778 S.W.2d 457, 461-62 (Tenn. Crim. App. 1989).

We find no error in the trial court's decision to charge the jury with the instant supplemental jury instruction, which was an accurate statement of relevant law. It was within the trial court's authority to respond to the jury's question in such a manner, and the court did admonish the jury not to place undue emphasis on this instruction. This issue is without merit.

## V. Sufficiency of the Evidence

Finally, the Appellant challenges the sufficiency of the evidence with regard to his two convictions for aggravated robbery. Specifically, the Appellant asserts that no rational trier of fact could have found him guilty of the crimes based upon the conflicting testimony of the two victims regarding the details of the crimes. In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may

be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Robbery is defined as the intentional or knowing theft of property from the person of another by violence or putting the person in fear. T.C.A. § 39-13-401(a) (2003). Pursuant to Tennessee Code Annotated section 39-13-402(a) (2003), aggravated robbery, as relevant to the indictment in this case, is robbery accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. A person commits theft of property "if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103 (2003).

In support of his argument that the evidence is insufficient, the Appellant relies upon conflicting testimony between the two victims and Silva's testimony at the preliminary hearing that he was "absolutely certain" that someone other than the Appellant was the perpetrator. We would acknowledge that, at times, the victim's testimony was conflicting and that Silva did identify a person other than the Appellant as the perpetrator at the preliminary hearing.

The Appellant's argument, however, is essentially a challenge to the weight and credibility of the testimony of Lawson and Silva. The scope of our examination of the evidence is not equivalent to that of the jury's. In a challenge to the sufficiency of the evidence, this court does not retry the defendant. We emphasize that our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible or non-credible proof, as these issues are resolved solely by the jury. Rather, we look to the record to determine whether there was substantive probative evidence to support the verdict. The second inquiry, the question of legal sufficiency, then follows: whether the record contains evidence from which the jury could have found the essential elements of the crime beyond a reasonable doubt. Every reasonable hypothesis of innocence need not be dispelled; it is only necessary that there exists proof which supports the elements of the crime.

Our review reveals the evidence is legally sufficient to support the verdicts. The two witnesses, though differing on various details of the crimes, each testified that they were robbed at

gunpoint by a man displaying at least one weapon. Lawson identified the Appellant at trial, as well as in a photo line-up. Although misidentifying the perpetrator at the preliminary hearing, Silva identified the Appellant as the perpetrator both at trial and in a pre-trial photo line-up. The proof further established that the Appellant, by use of a weapon, obtained Silva's wallet, Lawson's purse, its contents, and the keys to her Jeep Cherokee. Clearly, this evidence is sufficient to establish that the Appellant acted with the intent to deprive Lawson and Silva of their property, that the Appellant exercised control over said property without consent, and that he accomplished this act by putting the victims in fear, as well as by violence against Silva. From these facts, a rational trier of fact could have found the essential elements of the crimes of aggravated robbery beyond a reasonable doubt.

## CONCLUSION

Based upon the foregoing, the Appellant's two convictions for aggravated robbery are affirmed.

_____
DAVID G. HAYES, JUDGE