IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2006

## STATE OF TENNESSEE v. ASHLEY MARTIN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-08306     Chris Craft, Judge**

---

**No. W2005-01814-CCA-R3-CD  - Filed October 23, 2006**

---

The defendant, Ashley Martin, was convicted of two counts of aggravated robbery: aggravated robbery by violence and aggravated robbery by fear.  The trial court merged the convictions and sentenced the defendant to thirty years as a Range III, career offender.  This appeal follows the denial of his motion for a new trial in which he alleged that:  (1) the evidence was insufficient to support his conviction, and (2) the trial court erred in ruling his nine prior convictions for aggravated robbery were admissible for purposes of impeachment if he chose to testify.  After careful review, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Robert Wilson Jones, District Public Defender, and Tony N. Brayton and Trent Hall, Assistant Public Defenders, for the appellant, Ashley Martin.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michelle Parks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

As a result of an incident on August 4, 2003, at Exline's Best Pizza in Town, a restaurant in Shelby County, the defendant was charged with two counts of aggravated robbery and two counts of possession of cocaine with intent to sell or deliver.  A nolle prosequi was entered as to both counts of possession of cocaine.

During the defendant's trial, Yolanda Ware, the manager of the restaurant, testified that she was working at the register when a man entered the restaurant and asked about an application. She said that they were not hiring, and he left. He returned and inquired about the pay for a cook, pulled up his shirt, pulled out a gun, and pointed it at her. She described the robber as a black male wearing a baseball cap pulled down on his head, but she could not remember what he was wearing. She said that she would be unable to identify him if she saw him in the court room that day, but she then pointed him out in the courtroom. She testified that he wanted the money in the register and that she had difficulty opening the register. When the register was opened, he put down the gun and started to pick through the money. She recalled that there were four hundred dollars in the register. She testified that when he was picking through the money, she grabbed the gun and pointed it at him. He told her that it was not loaded so she threw it across the room, grabbed her son, and ran from the restaurant. She said she flagged down a car, and the police arrived shortly thereafter. She gave a statement to the police and identified the defendant in a photo line-up.

On cross-examination, Ms. Ware testified that there is a surveillance camera in the restaurant but either the tape was not working or there was no tape in the camera. She said that you can see the register on the surveillance monitor in the kitchen.

Next, Tamara McNary, the restaurant cook working on the morning of the incident, testified that she saw the defendant come in the first time and inquire about a job. She said an order came in, and she went to the kitchen to prepare it. She noticed on the monitor that the man had returned but, on this occasion, he was in the area of the counter and appeared to have a gun. She said she heard something like a gunshot and ran out the back door. She testified that the robber was a young black man wearing a blue cap, blue shirt, and blue jeans and that she had never seen him before this incident. She went to the house behind the store and told a man at this house about the robbery. This man called the police from a cell phone in his truck while following the robber. Ms. McNary was confused as to whether he phoned the police from his house phone or his cell phone. She provided a statement to the police and was able to identify the defendant in a photo line-up. At trial she was unable to identify the defendant.

During cross-examination, Ms. McNary acknowledged that she had identified the wrong person during a preliminary hearing and that she could not identify the sound she believed to be a gunshot. She did not know how the robber left because she stayed at the neighbor's house until the police arrived.

The next witness, Richard Brackey, was the neighbor who phoned the police and followed the robbery suspect in his truck. He testified that his wife works for the restaurant. He said that Tamara McNary came to his house and told him that the restaurant had been robbed. He did not observe the robbery but saw a black male run to the van, which he then followed in his truck. He described the suspect as wearing a blue shirt and blue jeans but said that he was unable to see his face. He listened to the 9-1-1 tape and authenticated it as his voice. He said he followed the van until two suspects exited the vehicle, carrying a weapon, and ran into the woods between Stage Road and James Road.

On cross-examination, Mr. Brackey testified that his home is located directly behind the restaurant, on the opposite side of a 200-foot field. He did not see the suspect come from inside the restaurant but saw him come from the front of the building. He said that Ms. McNary came out of the back exit which faces his house. He testified that the van was parked at the end of Corner Street and that he saw the suspect enter the van's sliding door and saw another person driving. He said he was between 100 and 150 feet behind the van when the occupants got out and ran through the woods. He said he stopped the van before it rolled into the road because the occupants left it in gear when they fled. He put the van in park and left the engine running.

The next witness, Cassandra Hampton, testified that she had recently sold the van to the defendant's brother. She said that the van was a black, four-door, M.T.D. van. She testified that she spoke with the defendant's mother regarding the van because she was afraid that there would be trouble between her son and the defendant's brother. She said that she approached the defendant's brother to sign the title to the van. She said that she knew of the relationship between the defendant and his brother but that she did not have any contact with the defendant regarding the purchase of the van.

Next, Officer Brian Westbrook, the first Memphis Police Officer to arrive on the scene, testified that the call went out on the police radio as an armed robbery. He recalled that he went to the restaurant and encountered two female black adults and a male black juvenile at the scene. He went inside to ascertain what happened and began the paperwork for his report. He spoke with all three witnesses who he described as excited, nervous, and scared. He did no other investigation into the robbery. He marked the location of the restaurant on a map which was admitted as evidence.

On cross-examination, Officer Westbrook said he spent two hours on the scene. He did not gather any evidence but was present while other officers processed the scene for prints and collected evidence. During redirect, he said his report reflected that Ms. McNary said she saw a gun pointed at Ms. Ware by the suspect.

Next, Officer Monica Carson, a patrol officer with the Memphis Police Department, testified that she responded to the robbery and went to the area where the suspect was apprehended. She identified the defendant as the suspect caught in the field. She said that she spoke with the defendant when he was taken into custody. She recalled that he said he robbed a business and was not alone. She said he was laughing and thought it was funny that the people in the restaurant thought he wanted to order a pizza. She said he identified the driver as someone from South Memphis named "Q" and told her that "Q" had no prior knowledge of the robbery. She identified the defendant's identification card with the name "Ashley Rogers" and said he signed his name "Ashley Martin." She said the defendant had a cut on his finger that he claimed occurred while jumping a fence.

Next, Officer Victor Lester testified that he was responsible for recovering the van. He initially testified that the van was green but, when he saw the arrest ticket he said it was a black Mazda minivan. He received a call with the general location of the vehicle, went to the area, and

observed the vehicle. He said the van had struck something and its tires were going flat. He said the van was unoccupied when he arrived and, inside, he found a drive out tag, a Tennessee drivers license application, and a photo. He recalled the name "Quinton Martin" was on the application. He testified that he did not process the van for prints. He placed a mark on the exhibit map where the van was located.

Next, Officer Laverne Jones testified she was employed with the crime response unit of the Memphis Police Department and that she went to the scene to collect evidence and make photographs. She recalled the cash register drawer was open when she arrived. She said she focused her investigation on the counter area where the incident occurred. She said she processed the scene and recovered the blood and fingerprint samples. She retrieved the blood and fingerprints from the interior primary door but was not involved in testing either sample.

On cross-examination, Officer Jones testified that she took the money recovered at the scene to have it chemically processed for prints, but it was not tested. She did not process a broken bottle recovered at the scene because no substance had been observed on the bottle.

Officer Elizabeth Mize of the Memphis Police Department testified she was on patrol on the day of the robbery. She responded to the robbery at the restaurant and saw the suspect, a black male wearing a blue t-shirt and jeans, running through a backyard and the woods on Viscosia. She was responsible for radioing other officers of the direction the suspect was running. She did not pursue the suspect and had no other involvement in the investigation.

Next, Cheryl Hayes, a criminal investigator with the district attorney's office, testified that she took DNA samples from the defendant and sent them to the lab to be tested against samples recovered at the scene. She took a photo of the defendant when she took the swabs but it did not turn out well. She contacted the latent print department and asked them to compare the recovered prints against the "R&I" of the defendant. She testified that the "R&I" is a unique identifier assigned to an individual when they are booked into jail and then filed according to the "R&I." She said the defendant signed the order as "Ashley Rogers."

Officer James Hill, a latent print examiner with the Memphis Police Department, testified that one of the fingerprints recovered at the restaurant was of value. He said the defendant was the individual responsible for the prints at the scene.

Officer Andre Mohammed of the Memphis Police Department testified that he responded to the call over the radio. He said he received a description of the suspect as a black male wearing a blue t-shirt and jeans and saw the suspect running through a field. Officer Mohammed pursued the defendant until he stopped and surrendered. He said there were several bills on the ground at the defendant's feet. He was able to identify the defendant in the courtroom as the individual that he apprehended in the field. He said the defendant had a cut on his hand that he claimed occurred while jumping a fence. He said the defendant's demeanor was one of regret.

On cross-examination, Officer Mohammed testified that he collected $150 at the scene. He acknowledged he had reviewed the arrest ticket prior to his testimony. He said he turned the defendant over to Officer Carson.

Next, Officer Thomas E. Arnold, a K-9 officer with the Memphis Police Department, testified that he was called by other officers who were chasing a robbery suspect. He said his dog is trained to search for human odors and has been very successful in apprehending individuals. Officer Arnold and the dog went into the woods, and the dog found the pistol hidden under some brush. He notified the officers at the crime scene and they recovered the pistol. He testified that the defendant was apprehended in a bean field but that he was not involved in the arrest.

Officer Daniel Jacobs testified that he was responsible for recovering the pistol discovered by the police dog. He said the pistol was loaded with six live rounds. He also recovered one hundred dollars from the street where the van was abandoned and in the wooded area. He said he tagged the money and stored it.

Next, Sergeant Joe Starks testified he was the case officer on this investigation. He said he spoke with both Ms. Ware and her son during his investigation. He said Ms. Ware gave a statement and identified the defendant in the photo spread. Two identification cards were recovered in the abandoned van. He testified the defendant waived his rights and agreed to provide a statement. In his statement, the defendant said he was in a store with a gun and that he put down the gun. The defendant said that Ms. Ware threw the gun; he retrieved it and then left.

On cross-examination, Sergeant Starks said he did not know if the gun was processed for prints. He testified he does not keep his handwritten notes after they are typed.

At the conclusion of this testimony, the State rested their proof and the trial court conducted a jury-out hearing on the admissibility of the defendant's prior felony convictions. The State sought to use the defendant's prior convictions as impeachment evidence and argued that the convictions go to truthfulness. The trial court determined that the defendant's prior convictions for aggravated assaults do not involve dishonesty and would not be allowed for impeachment because they were more prejudicial than probative. It also determined that the nine priors for aggravated robberies did involve dishonesty and would be admissible as impeachment evidence. The defendant moved for acquittal, but his motion was denied. The defendant took the stand and acknowledged that he did not wish to testify.

The defendant's only witness was Dr. Qadriyyah Debnam, a special agent and forensic scientist in serology with the DNA unit of the Tennessee Bureau of Investigation, Memphis Crime Laboratory. He testified that he received two blood samples from the scene, as well as the swabs from the defendant. He said the samples did not match the blood at the crime scene.

On cross-examination, Dr. Debnam testified that he had no knowledge of the facts of the case. He said his sole responsibility was to determine whether there was a DNA match and there were no matches in this case.

The defendant rested his case, and the matter was sent to the jury. The closing arguments of the parties are not a part of the record on appeal. After deliberation, the defendant was found guilty on two counts: (1) aggravated robbery by violence and (2) aggravated robbery by fear. The counts were merged into a single conviction, and the defendant was later sentenced to thirty years as a career criminal with his sentence to be served consecutive to his prior aggravated robberies for which he was on parole at the time of this crime.

Analysis

I. Sufficiency

The defendant argues that the evidence was not sufficient for a rational trier of fact to find him guilty beyond a reasonable doubt. He concedes that there was evidence to support his convictions in light of the proof offered by the State at trial but requests that this court review the evidence to determine if a rational trier of fact could find him guilty beyond a reasonable doubt.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn.1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is

insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn.1982); Grace, 493 S.W.2d at 476.

In support of his argument, the defendant contends that the evidence, tested against the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979), is insufficient to justify a rational trier of fact in finding him guilty beyond a reasonable doubt. He asserts that no witness was able to unequivocally identify him at trial as the perpetrator of the robbery and contends that the only evidence against him was his arrest in a field in the vicinity of the getaway van, an oral statement of admission, and a palm print found at the scene. He contends that this evidence should not have convinced a rational person of his guilt. The record does not support his claims.

The proof here demonstrates that the defendant entered a restaurant, pulled out a gun, and pointed it at the restaurant manager. He indicated that he wanted money from the cash register and, when it was opened for him, he picked through the money and took what he wanted. The manager was able to identify the defendant from a photo line-up on the day of the robbery and pointed him out in the courtroom at trial. Further, his palm print was recovered from the front door of the restaurant. He fled the robbery scene in a van, belonging to his brother, which they later abandoned. When he was apprehended in a nearby field, he had several bills of money around him and at his feet. He made a statement to one officer that he had robbed a business and laughed because the employees thought he wanted a pizza. In a later interview with police, he admitted he was responsible for the robbery, and his story was consistent with the manager's story.

Based on our review of the evidence, we conclude that a jury could reasonably conclude that the defendant committed the offense of aggravated robbery. We affirm the conviction of the defendant.

II. Prior convictions

The defendant argues that the trial court erred in ruling that his nine prior convictions for aggravated robbery would be admissible for impeachment purposes should he decide to testify. He argues that the prior convictions are unfairly prejudicial due to their nature and number as they were all the same type of offense for which he was on trial.

The State may use a prior adult conviction to impeach the testimony of an accused in a criminal prosecution if: (a) the conviction was for a crime that is punishable by death or imprisonment in excess of one year or a misdemeanor involving dishonesty or false statement; (b) less than ten years has elapsed between the date the accused was released from confinement and the commencement of the prosecution; (c) the State gives reasonable written notice of the particular conviction or convictions it intends to use to impeach the accused prior to trial; and (d) the trial court finds that the probative value of the felony or misdemeanor on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609; See State v. Mixon, 983 S.W.2d 661, 674 (Tenn.1999). The admissibility of the prior convictions is within the trial court's discretion.

Here, the trial court did not abuse its discretion in concluding that the probative value of the defendant's convictions outweighed their prejudicial effect. The trial court found that aggravated robbery involved dishonesty and was probative of the defendant's credibility. This court has previously concluded that crimes involving theft are probative of credibility. See State v. Crank, 721 S.W.2d 264, 266-67 (Tenn. Crim. App. 1986); State v. Miller, 737 S.W.2d 556, 560 (Tenn. Crim. App.1987); State v. Tune, 872 S.W.2d 922, 927 (Tenn. Crim. App.1993). Prior convictions for these types of felonies may be used to impeach a defendant on trial for an offense involving theft. State v. Baker, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997) (citing Tune, 872 S.W.2d at 927; Miller, 737 S.W.2d at 560; Johnson v. State, 596 S.W.2d 97, 104 (Tenn. Crim. App. 1979); Price v. State, 589 S.W.2d 929, 931-32 (Tenn. Crim. App. 1979)). The trial court considered each of the defendant's prior convictions and denied the admission of his convictions for facilitation and aggravated assaults but determined that the robbery convictions would be admissible as crimes involving dishonesty. The court also determined that because the convictions for aggravated robbery all occurred on the same day that they were not as prejudicial as if they had been committed over several years. Despite the defendant's contentions, we do not find any abuse of discretion and conclude that the trial court properly determined that the defendant's prior convictions for aggravated robbery were admissible for purposes of impeachment.

### Conclusion

For all the foregoing reasons, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE